OPINION
{¶ 1} Defendant-appellant, Billie Waddell, Jr. (hereinafter "Waddell"), appeals the judgment of the Marion County Court of Common Pleas, finding him guilty of one count of Illegal Use of a Minor in Nudity Oriented Material or Performance, a second degree felony in violation of R.C. 2907.323(A)(1); two counts of Soliciting Perjury, third degree felonies in violation of R.C. 2921.11(A); and one count of Soliciting the Intimidation of a Witness, a first degree misdemeanor in violation of R.C. 2923.03(A). Waddell was sentenced to an aggregate of nine years for all offenses.
 {¶ 2} On June 17, 2003, Waddell took seventeen-year-old Shelia Blair and her fourteen-year-old sister Brittany Freeman to the Fairfield Inn in Marion, Ohio and paid for a room for one night. According to testimony by Blair, Waddell took the two girls to Wal-Mart and purchased nightgowns and bathing suits for them, then took them to dinner before going to the hotel for the evening. At the hotel, Blair stated that Waddell instructed the girls to pose in their underwear and their bathing suits and Waddell took photographs of them in various states of undress.
 {¶ 3} On July 8, 2003, Waddell's daughter, Miranda, approached Marion City Police Officer Steven Ross inquiring as to whether it was illegal for someone to have nude pictures of young girls at their residence. Miranda proceeded to take Officer Ross to Waddell's house and gave the officer the negatives of the pictures of Blair and Freeman. Waddell was interviewed by the Marion Police. Although he denied taking any nude pictures of Blair and Freeman, he admitted taking pictures of the girls clothed.
 {¶ 4} Three different indictments were subsequently brought against Waddell with a total of twenty charges. The trial court joined all three indictments for the purpose of trial. A jury trial commenced and on February 19, 2004, the jury returned a verdict of guilty on one count of Illegal Use of a Minor in Nudity Oriented Material or Performance, a second degree felony in violation of R.C. 2907.323(A)(1); two counts of Soliciting Perjury, third degree felonies in violation of R.C. 2921.11(A); and one count of Soliciting the Intimidation of a Witness, a first degree misdemeanor in violation of R.C. 2923.03(A). On May 6, 2004, Waddell pled guilty to one count of Voyeurism, a first degree misdemeanor in violation of R.C. 2907.08(E).[1]
 {¶ 5} On June 11, 2004, Waddell was sentenced. The trial court imposed a seven year prison term for the second degree felony Illegal Use of a Minor in Nudity Oriented Material or Performance conviction; two years on each of the third degree felony Soliciting Perjury convictions, to be served concurrently; six months on the first degree misdemeanor Soliciting the Intimidation of a Witness in a Criminal Case; and six months on the first degree misdemeanor Voyeurism conviction. The seven year prison term and the two year prison term were ordered to be served consecutively and the misdemeanor sentences of six months each were ordered to be served concurrently to the prison terms, for an aggregate sentence of nine years.
 {¶ 6} It is from this conviction and sentence that Waddell appeals, setting forth seven assignments of error for our review. For clarity of analysis, some assignments of error have been combined.
 ASSIGNMENT OF ERROR NO. I The trial court erred in allowing photographs that were not properlyauthenticated to be admitted as evidence.
 {¶ 7} Waddell alleges that the photographs of Blair and Freeman admitted into evidence were not properly authenticated because the developer of the photographs should have been called to testify about processing the negatives. Because the prosecution failed to do so, Waddell argues that the trial court erred in admitting the photographs into evidence.
 {¶ 8} A trial court enjoys broad discretion in the admission and exclusion of evidence. State v. Hymore (1967), 9 Ohio St.2d 122, 128. Therefore, our review is limited to determining whether the trial court abused its discretion. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. The term "abuse of discretion" connotes a judgment that is rendered with an unreasonable, arbitrary, or unconscionable attitude. Cedar BayConstr., Inc. v. Fremont (1990), 50 Ohio St.3d 19, 22.
 {¶ 9} Pursuant to Evid.R. 901(B)(1), a photograph may be authenticated by evidence sufficient to support a finding "that the matter in question is what its proponent claims." Moreover, testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient for authentication purposes. Id.
 {¶ 10} In the case sub judice, Freeman testified that the photographs admitted into evidence of her and her sister were the same photographs taken by Waddell at the Fairfield Inn on June 17, 2003. Deputy Brian Lovell also testified that the photographs were the same ones that he confronted Waddell with during the police interview in which Waddell admitted taking some of the photographs.
 {¶ 11} Based on this evidence alone, the trial court could reasonably conclude that the photographs were properly authenticated. Two witnesses provided evidence that the photographs were what they purported to be, and one of those witnesses was the subject of the photographs. Therefore, we do not find that the trial court abused its discretion in admitting the photographs into evidence.
 {¶ 12} Waddell's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in allowing testimony of witnesses that were notpresent to testify at trial.
 {¶ 13} At trial, over an objection by Waddell's counsel, the court allowed Waddell's daughter, Miranda, to testify regarding a conversation she had with Waddell's parents, who are Miranda's grandparents. In ruling on defense counsel's objection, the trial court found that Miranda's testimony was admissible as a statement by a co-conspirator. See Evid.R. 801(D)(2). This ruling was based on the prosecution's theory that Waddell and his father were co-conspirators since it was alleged that Waddell asked his father to "get to" Miranda and make sure she did not testify against him.
 {¶ 14} Waddell argues that the trial court's ruling was in error. Waddell first contends that the prosecution failed to establish that Waddell and his father were co-conspirators and that failure made Miranda's testimony regarding her grandfather's statements inadmissible as statements by a co-conspirator. Additionally, Waddell asserts that, since the prosecution did not call his parents to testify, his Sixth Amendment right to confront witnesses against him was violated.
 {¶ 15} We agree with Waddell's contention that the prosecution did not establish that Waddell and his father were co-conspirators. Assuming that the trial court's ruling allowing Miranda to testify about a conversation she had with her grandparents constituted error, however, we find it was harmless error, at most.
 {¶ 16} First, we find that Miranda's statements regarding her conversation with her grandparents were otherwise admissible as non-hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid. R. 801(C). Based on recorded telephone conversations between Waddell and his father, the prosecution alleged that Waddell solicited his father to talk to Miranda and try to affect her testimony. Miranda's testimony was not offered to prove thecontents of her conversation with her grandfather, but rather to corroborate that Miranda's grandfather had, in fact, contacted her as Waddell had asked him to do. This evidence was relevant to the Soliciting Perjury charge against Waddell.
 {¶ 17} Second, the United States Supreme Court case that Waddell relies on for his proposition that his right to confront witnesses against him has been violated, Crawford v. Washington (2004), 541 U.S. 46, deals solely with exceptions to the hearsay rule. Statements which are not hearsay are not implicated by the confrontation clause because they are not testimonial in nature. Id. Finding that Miranda's testimony did not constitute hearsay, we hold that the trial court did not err in ruling it admissible.
 {¶ 18} Waddell's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. III The prosecutor committed numerous acts of misconduct denying thedefendant a fair trial.
 {¶ 19} Waddell argues, in this assignment of error, that his trial was ripe with examples of prosecutorial misconduct. Waddell contends that the prosecution prejudiced the jury against him during voir dire, in opening statements and in closing. Waddell asserts that the most heinous act of prosecutorial misconduct occurred when the prosecutor commented on Waddell's decision not to testify in his own defense. By committing numerous acts of misconduct, Waddell alleges the prosecution denied him a fair trial.
 {¶ 20} The applicable standard of review for prosecutorial misconduct is whether the comments by the prosecution were improper, and, if so, whether they prejudiced Waddell's substantial rights. State v. Brady,
Marion App. No. 9-03-27, 2003-Ohio-6005, ¶ 6 (citations omitted). However, prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Waddell of a fair trial based on the entire record. Id.
 {¶ 21} The conduct Waddell complains of consists of the following: during voir dire, the prosecutor asked the jurors whether they had heard of various, specific pornographic magazines relating to underage females; in opening statements, the prosecutor referred to an apology letter that Waddell wrote to his family which stated, "I hope they just put me on life time probation;" during examination, the prosecutor asked an investigator if he had prior dealings with Waddell; and in closing statements, the prosecutor stated that the reason Waddell does not have a prior record is because he has never been caught, that the "scum of the earth" get equal protection of the law and that Waddell attacked Blair and Freeman.
 {¶ 22} Additionally, Waddell claims that the prosecutor committed misconduct by stating:
[w]hen the case began I told you there wasn't a defense in this case.They've got to say something. They've got to attack the State's evidenceand witnesses in some way because I told you when the case started wewouldn't be here. The defendant is absolutely entitled to a jury trial.It's his constitutional right. But when you want one you got to saysomething, right? I mean, you got to go at — [Objection by defensecounsel].
Waddell claims that this statement by the prosecutor references his decision not to testify and that it is an impermissible allusion for the prosecutor to make. We note, however, that the prosecutor continued by stating:
[t]he defense has to — the lawyer has to attack the evidence. He's gotto say something, and that's what he did in this case. We accept ourburden. They don't have to put on any evidence, period. And we're notrequiring them to. I'm just suggesting to you that they have to thenattack everything that the State does.
Taken in context, therefore, we can not conclude that the prosecutor's comments about Waddell's decision not to testify were improper or outside the bounds of legitimate advocacy.
 {¶ 23} After reviewing the other alleged instances of prosecutorial misconduct, we find that only the prosecutor's statement that Waddell does not have a prior record because he "has never been caught before" was inappropriate. Although the prosecutor was responding to the apology letter Waddell wrote to his family in which he stated that he had no criminal record, was not a violent man and had never been in trouble, we cannot condone the prosecutor's inference that Waddell had engaged in prior criminal acts when there was no evidence to support such an inference. Based on the entire record, however, we do not find that this statement alone deprived Waddell of a fair trial and, therefore, does not provide a basis for reversal.
 {¶ 24} Waddell's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. IV The convictions for Soliciting Perjury are not supported by themanifest weight of the evidence.
 ASSIGNMENT OF ERROR NO. V There was not sufficient evidence to support convictions forSolicitation of Perjury in this case and the trial court erred inoverruling the defendants [sic] Rule 29 motion for acquittal.
 {¶ 25} Waddell argues herein that the prosecution's evidence of the charge of Solicitation of Perjury consisted of alleged phone calls and confusing hearsay evidence. Waddell also alleges that the witnesses who provided testimony against him lacked credibility. Waddell contends that there was nothing in the audio tapes of his telephone conversations from prison, which were played for the jury, that would prove he solicited anyone to give a false statement.
 {¶ 26} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230.
 {¶ 27} Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261. When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1981), 61 Ohio St.3d 259.
 {¶ 28} The crime of Perjury is defined by R.C. 2921.11, which states in pertinent part, "[n]o person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material." R.C. 2923.03 further makes it a crime to solicit another to commit an offense, such as perjury.
 {¶ 29} The evidence of Solicitation of Perjury against Waddell consisted of audio tapes of telephone calls placed by Waddell, from prison, to his parents and to his children and also consisted of Miranda's testimony that her grandparents telephoned her. During Waddell's conversations with his parents, he stated that he wanted his father to interrogate Waddell's children to prepare them for testifying and to remind the children of what they need to know. When Waddell spoke to his children he told them, among other things, to tell the grand jury that there was "no evidence to destroy;" and that "most of the pictures were left behind by your mom."
 {¶ 30} Giving appropriate discretion to the trier of fact on matters relating to the weight of the evidence and the credibility of the witnesses, we do not find that the jury clearly lost its way in finding Waddell guilty of Solicitation of Perjury. Further, although we recognize that there was no definite statement by Waddell directing his children to lie for him, after viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found Waddell guilty of Solicitation of Perjury based on the statements that he did make, by acting to induce others to make false statements under oath. Therefore, we conclude that there was sufficient evidence to support Waddell's conviction. The trial court did not err in denying Waddell's Crim.R. 29 motion for acquittal.
 {¶ 31} Waddell's fourth and fifth assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. VI The trial court erred in sentencing the defendant to more thanthe minimum sentence.
 {¶ 32} Waddell was convicted of Illegal Use of a Minor in Nudity Oriented Material or Performance, a second degree felony. See R.C.2907.323(A)(1). A felony of the second degree is punishable by a prison term of two, three, four, five, six, seven or eight years. See R.C.2929.14(A)(2). The trial court imposed a seven year prison term on this conviction. Waddell was also convicted of two counts of Soliciting Perjury, third degree felonies. See R.C. 2921.11(A). A third degree felony is punishable by a prison term of one, two, three, four or five years. See R.C. 2929.14(A)(3). The trial court imposed concurrent two-year prison terms on these convictions.
 {¶ 33} Waddell argues that, although the trial court made the findings required to sentence him to more than the minimum term, there was no serious consideration of the sentencing factors. On review, a sentence imposed by a trial court will not be disturbed absent a showing by clear and convincing evidence that the sentence is unsupported by the record; the procedure of the sentencing statutes was not followed or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law. See R.C. 2953.08(G).
 {¶ 34} When sentencing an offender, R.C. 2929.14(B) requires that the trial court impose the shortest prison term authorized for the offense unless one or more of the following applies:
(1) The offender was serving a prison term at the time of the offense,or the offender previously had served a prison term.
 (2) The court finds on the record that the shortest prison term willdemean the seriousness of the offender's conduct or will not adequatelyprotect the public from future crime by the offender or others.
 {¶ 35} In imposing the sentences for Illegal Use of a Minor in Nudity Oriented Material or Performance and Soliciting Perjury, the trial court stated, at the sentencing hearing, that the minimum terms would demean the seriousness of the offense and would not adequately protect the public. The trial court reiterated these findings in its Judgment Entry of Sentencing.
 {¶ 36} We hold that these findings were sufficient pursuant to R.C.2929.14(B). The trial court is only required to "find on the record" that the shortest prison term would demean the seriousness of the offender's conduct or would not adequately protect the public. The trial court is not, however, required to give its reasons for those findings before it can impose more than the minimum authorized sentence. State v. Edmonson
(1999), 86 Ohio St.3d 324, 326.
 {¶ 37} Furthermore, we hold that these findings by the trial court do not run afoul of the United States Supreme Court's recent decision inBlakely v. Washington (2004), 542 U.S. ___, 124 S.Ct. 2531. The Blakely
decision was based on a prior rule of law announced in Apprendi v. NewJersey (2000), 530 U.S. 466, which stated "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely, the court further defined "statutory maximum" as the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. ___, 124 S.Ct. at 2537.
 {¶ 38} While there is no clear consensus on the applicability of theBlakely decision to Ohio felony sentencing law, the Fourth, Fifth, Ninth and Twelfth District Courts of Appeals have determined that Blakely does not impact Ohio's sentencing scheme.[2] Recently, this court also determined that Blakely is not applicable to Ohio's statutory scheme. SeeState v. Trubee, 3d Dist. No. 9-03-65, 2005-Ohio-552.
 {¶ 39} In Trubee, we recognized the differences between the Washington state sentencing framework found unconstitutional in Blakely and the determinations that an Ohio sentencing court must make before imposing a sentence under Ohio law. We determined that once a jury determines an offender is guilty of a particular offense, the framework of Ohio's sentencing structure allows a judge to sentence the offender within the overall range for each applicable felony degree without running afoul of the Sixth Amendment. Id. at ¶ 23. Therefore, the minimum sentence directive found in R.C. 2929.14(B) merely directs the judge's discretion in sentencing within the overall maximum range; it does not constitute a substitute maximum.
 {¶ 40} Accordingly, Waddell's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VII The trial court erred in sentencing the defendant to consecutivesentences.
 {¶ 41} Before consecutive sentences may be imposed, the trial court is required to make several findings in accordance with R.C. 2929.14 and R.C. 2929.19. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender." R.C. 2929.14(E)(4). Second, the court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger he poses to the public." Id. Finally, the trial court must find the existence of one of the three following circumstances:
(a) the offender committed one or more of the multiple offenses whilethe offender was awaiting trial or sentencing * * * or was underpost-release control for a prior offense;
 (b) * * * the harm caused by * * * the multiple offenses was so greator unusual that no single prison term for any of the offenses committedas part of a single course of conduct adequately reflects the seriousnessof the offender's conduct;
 (c) the offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public from futurecrime by the offender.
 {¶ 42} In addition to these findings, the trial court must give its reasons for imposing consecutive sentences. See R.C. 2929.19(B)(2)(c). Therefore, the trial court must not only make the required findings under R.C. 2929.14(E)(4), but must also substantiate those findings by "identifying specific reasons supporting the imposition of consecutive sentences." State v. Brice (March 29, 2000), 4th Dist. No. 99CA24.
 {¶ 43} In this assignment of error, Waddell again argues that although the trial made all of the necessary findings to impose consecutive sentences, the trial court's reasons were insufficient and cursory. Waddell further argues that the trial court failed to articulate how the statutory sentencing factors applied to his case.
 {¶ 44} At the sentencing hearing, the trial court announced:
In deciding on consecutive sentences I'm going to find that they arenecessary to protect the public or adequately punish the offender.Consecutive sentences are not disproportionate to the seriousness of theoffender's conduct and to the public danger imposed by the offender, andthe offenses were committed while you were awaiting trial or sentencingunder Community Control Sanction, or under Post Release Control after aprison term.
 Most specifically, you were awaiting trial on the Felony 2 count whenthe Soliciting Perjuries occurred.
 Simply stated, you know, I will not tolerate that sort of activity. Iwill not have people trying to corrupt the system in that fashion.
 {¶ 45} Based on these findings, we can not agree with Waddell that the trial court's reasons for imposing consecutive sentences were insufficient. The trial court specifically stated that its reason for imposing consecutive sentences was based on Waddell's conduct while he was awaiting trial. Had the trial court ordered the sentences to be served concurrently, Waddell, in effect, would not have been punished for his attempts to alter the course of his trial by soliciting witnesses to commit perjury. Therefore, we find that the trial court did not err in imposing consecutive sentences.
 {¶ 46} Accordingly, Waddell's seventh assignment of error is overruled.
 {¶ 47} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 Bryant and Shaw, JJ., concur.
[1] The victim of Waddell's Voyeurism conviction was not Blair or Freeman, but another minor female.
[2] See, e.g., State v. Scheer, 158 Ohio App.3d 432, 2004-Ohio-4792;State v. Hughett, 5th Dist. No. 04CAA06051, 2004-Ohio-6207; State v.Rowles, 9th Dist. No. 22007, 2005-Ohio-14; State v. Berry, 12th Dist. No. CA2003-02-053, 2004-Ohio-6027.